CHARLES PAXTON, Efq., applied to the Superiour Court for the Writ of Affiftants, as by Act of Parliament to be granted to him.

Upon this, the Court defired the Opinion of the Bar, whether they had a Right and ought to grant it.

*Mr. Otis & Mr. Thacher* fpoke againft.

*Meffrs. Gridley & Auchmuty* (2) for granting it.

*Mr. Thacher* firft read the Acts of 14 Car. 2, ch. 22, and 7 & 8 of Wm. & Mary, upon which the Requeft for this Writ is founded. (3)

Though this Act of Parliament has exifted 60 Years, yet it was never applied for, nor ever granted, till

1761.

PAXTON'S CASE.

Rec. 1761. Fol. 225.

This Court has Power to iffue general Writs of Affiftance to Officers of the Cuftoms.

---

(1) Auguft term 1 Geo. 3, which was adjourned without day on Thurfday, November 19th, 1761. Rec. 1761, fol. 239. The argument and decision, here reported, were made upon Wednefday, the 18th of November. Bofton Gazette of November 23, 1761.

(2) Auchmuty was foon after appointed Advocate General, in the place of Otis, who had refigned to avoid arguing for these Writs. Wafhburn's Jud. Hift. Mafs. 185, 186.

(3) Sts. 13 & 14 Car. 2, c. 11, § 5; 7 & 8 W. 3, c. 22, § 6; quoted in Gridley's firft argument, *poft*, 480, 481.

till 1756; (4) which is a great Argument againſt granting it; not that an Act of Parliament can be antiquated, but Non-uſer is a great Preſumption that the Law will not bear it; this is the Reaſoning of Littleton and Coke.  Knight Service, p. 80, Sect. 108. (5)  Moreover, when an Act of Parliament is not expreſs, but even doubtfull, and then has been neglected and not executed, in ſuch a Caſe the Preſumption is more violent.

*Ch. Juſtice.* (6)  The Cuſtom Houſe Officers have frequently applied to the Governour for this Writ, and have had it granted them by him, (7) and therefore, though he had no Power to grant it, yet that removes the Argument of Non-uſer.

*Mr. Thacher.*  If this Court have a Right to grant this Writ, it muſt be either *ex debita Juſtitia* or diſcretionary.  If *ex debita Juſtitia*, it cannot in any Caſe be refuſed; which from the Act itſelf and its Conſequences, he argued, could not be intended. It can't be diſcretionary; for it can't be in the Power of any Judge at diſcretion to determine that I ſhall have my Houſe broken open or not. As ſays Juſt. Holt, " There can be no diſcretionary Power whether a Man ſhall be hanged or no." (8)

He moved further that ſuch a Writ is granted and muſt iſſue from the Exchequer Court, and no other

(4) *Paxton's caſe*, Auguſt term, 1755 ; *poſt*, 402–404, & notes.
(5) Co. Lit. 81 a, 81 b.  S. P. 11 Met. 291.
(6) Hutchinſon, appointed November 13th, 1760.  *Poſt*, 410, 411.
(7) S. P. 3 Hutchinſon's Hiſt. Maſs. 92.  *Post*, 401.
(8) *Armſtrong* v. *Liſle*, (1697) Comb. 410.  *S. C.* J. Kel. 95, 105 ;
                                                          Skin.

other can grant it; 4 Inft. 103; and that no other Officers but fuch as conftitute that Court can grant it.

1761.

Paxton's
Case.

Skin. 671; Holt, 63; 12 Mod. 109, 157; Carth. 395; 1 Salk. 63. The decifion in that cafe was, that a conviction of manflaughter and allowance of benefit of clergy were a bar to an appeal of murder by the heir of the deceafed; and that the defendant was entitled to be allowed his clergy at once, without waiting for the trial of the appeal, on which, if convicted, he might be hanged. S. P. 3 Inst. 130; *Smith* v. *Taylor*, (1771) 5 Bur. 2778.

Benefit of clergy does not appear to have been allowed in the Colony of Maffachufetts. 1 Hutchinfon's Hift. Mafs. (3d ed.) 388, note. At a later period, it was allowed in the Province in cafes of manflaughter and burglary. *Trial of the Britifh Soldiers*, (ed. 1770) 209. Wafhburn's Jud. Hift. Mafs. 194. But it was not fettled to what other crimes it extended. Refolution of General Court in February, 1768, 14 Mafs. Archives, 507. 2 John Adams's Works, 534. Opinion of Trowbridge on " Benefit of Clergy refpecting Rape," Keith MS. No. 11. (*Vid. poft*, 478.) It was abolifhed here by St. 1784, c. 56.

The appeal of death was by Lord Holt " efteemed a noble remedy, and a badge of the rights and liberties of an Englifhman." *Rex* v. *Toler*, 1 Ld. Raym. 557; 12 Mod. 375; Holt, 483. See Barrington on Sts. (5th ed.) 27. In the early part of the laft century in England, perfons who had been acquitted on indictments for murder, were often tried, convicted and executed on appeals. Kendall on Trial by Battel (3d ed.), 44-47. In 1770 its abolition was fuggefted in the Houfe of Commons, but not preffed. 2 Cavendifh Debates, 13. 20 Howell's State Trials, 716. An appeal of murder was brought in England as lately as *1817*, but defeated by the appellant's declining to accept the wager of battel. *Afhford* v. *Thornton*, 1 B. & Ald. 403. Such appeals, as well as all trials by battel, were then abolifhed by St. 59 G. 3, c. 46.

The Englifh Sts. of 9 H. 3, c. 34, & 6 Edw. 1, c. 9, concerning appeals of murder, were in force in the Provinces of Pennfylvania and Maryland. Report of Judges, 6 Binn. 599, 604. Kilty on Maryland Sts. 141, 143, 158. It is faid that no fuch appeal was ever brought in Pennfylvania. Roberts on Britifh Statutes in Pennfylvania, 59, 60. But in Maryland in 1765 a negro was convicted and executed upon fuch an appeal. *Soaper* v. *Tom*, 1 Har. & McHen. 227. The St. of 9 H. 3 was exprefsly adopted in South Carolina in 1712; and Mr. Cooper, the ftate editor of its ftatutes, doubts whether trial by battel and appeal of death were not both ftill in force there in 1837. 2 Sts. at Large of South Carolina, 401, 403, 715.

On the debate in the Houfe of Commons in 1774 on the bill " for the better adminiftration of Juftice in Maffachufetts Bay," a claufe fufpending

Benefit of clergy in Maffachufetts.

Appeal of death in England.

Appeal of murder in the other Colonies.

In Maffachufetts Bay.

1761.

PAXTON'S
CASE.

it.    2 Inft.  551.    That this Court is not fuch a
one, vid. Prov. Law. (9)    This Court has in the
moft folemn Manner difclaimed the Authority of
the Exchequer; this they did in the Cafe of Mc-
Neal of Ireland & McNeal of Bofton. (10)    This
they cannot do in Part; if the Province Law gives
them any, it gives them all the Power of the Ex-
chequer Court; nor can they chufe and refufe to
act at Pleafure.    But fuppofing this Court has the
Power of the Exchequer, yet there are many Cir-
cumftances which render that Court in this Cafe an
improper Precedent; for there the Officers are
fworn in that Court, and are accountable to it, are
obliged there to pafs their Accounts weekly; which
is not the Cafe here.    In that Court, there Cafes
are tried, and there finally; which is another Diver-
fity.    Befides, the Officers of the Cuftoms are their
Officers, and under their Check, and that fo much,
that

---

fufpending the appeal of murder was vigoroufly affailed by Dunning,
Burke, Fox, and others, and withdrawn.   17 Parl. Hift. 1291, 1292,
1296.   And Mr. Kendall thinks, it exifted in the Colonies.   Kendall,
248, 249, 272.   But Mr. Dane fays, the appeal of felony did not exist
here.   7 Dane Ab. 336.   And fee Conftitution of Maffachufetts, c. 6,
art. 6; Declaration of Rights, arts. 12, 15; U. S. Conftitution, amend-
ment 5.

Trial by bat-
tel.

In England, the last joinder of iffue for trial by battel was on a writ
of right in 1638; but the judges deferred the combat from time to
time for error in the record until 1641, when the Houfe of Commons,
upon the petition of the tenant, "ordered a bill to be brought in to take
away trial by battel."   *Claxton* v. *Lilburne*, 2 Rufhw. Hift. Coll. 788,
790; 3 Ib. 356.   Commons & Lords Journals 1620–1641, quoted in
Kendall, 135, note.   3 Bl. Com. 337 *& feq.*   But no fuch bill was
paffed in England until 1820, *ut sup.*   This mode of trial is not fuppofed
to have been introduced in America, unlefs in South Carolina, *ut sup.*
*Poft*, 178.   3 Wilfon's Works, 142.   3 Dall. 350.   2 Sumner, 68.

(9) Prov. St. 11 W. 3, Anc. Chart. 330, 331.

(10) *McNeal* v. *Brideoak, poft,* 470, note.

that for Miſbehaviour they may puniſh with corpo-
ral Puniſhment.   3 & 4 Car. 2, § 8. (11)   7 & 8
W. & M. does not give the Authority. (12)

(*Mr. Otis* was of the ſame Side, but I was abſent,
while he was ſpeaking, moſt of the Time, and ſo
have but few Notes.)

*Mr. Otis.*   12 Car. 2, 19. (13)   13 & 14 Car. 2,
p. 56.   Let a Warrant come from whence it will
improperly, it is to be refuſed, and the higher the
Power granting it, the more dangerous.   The Ex-
chequer itſelf was thought a Hardſhip in the firſt
Conſtitution.   Vid. Rapin, Vol. 1ſt, p. 178, 386,
403, 404. (14)   Vol. 2, 285, (15) 375. (16)

It

---

(11) St. 13 & 14 Car. 2, c. 11, § 8.

(12) St. 7 & 8 W. 3, c. 22, § 6.

(13) St. 12 Car. 2, c. 19, *poſt*, 395, note.

(14) Rapin's Hiſt. of Eng. (2d ed.) London, 1732. The pages re-
ferred to in the firſt volume relate to the Court of Exchequer and pro-
ceedings therein.

(15) Where Rapin ſays, that in 1629 the privy council of Charles 1
gave orders, " impowering the officers of the cuſtoms to enter into any
ſhip, veſſel, or houſe, and to ſearch in any trunk or cheſt, and break any
bulk whatſoever, in default of the payment of cuſtoms.   But beſides that
this had never been practiſed before, another inconvenience aroſe.   Theſe
officers, under colour of ſearching, uſed many oppreſſions and rogueries,
which cauſed the people ſtill the more to exclaim."   See alſo 1 Ruſh-
worth's Hiſt. Coll. 665, 668, 669 ; 2 Ib. 8, 9.

Breaking of
houſes, &c.,
by officers of
cuſtoms in
England in
1629 :

Before writs of aſſiſtance were iſſued in Maſſachuſetts, the officers of
the cuſtoms, " merely by the authority derived from their commiſſions,
had forcibly entered warehouſes, and even dwelling-houſes, upon infor-
mation that contraband goods were concealed in them."   But " the
people grew uneaſy under the exerciſe of this aſſumed authority," and
reſiſted or ſued the officers.   3 Hutchinſon's Hiſt. Maſſ. 92.

In Maſſachu-
ſetts before
1755.

(16) The articles of impeachment againſt the Earl of Strafford in
1641, beginning with the ninth article, which charged him with iſſuing
general warrants of arreſt.   *S. C. & S. P.* in Ruſhw. Hiſt. Coll. 65,
236–240 ; 3 Howell's State Trial 1391, 1404, 1427.

Impeachment
of Strafford.

1761.

PAXTON'S
CASE.

It is worthy Conſideration whether this Writ was conſtitutional even in England; (17) and I think it plainly appears it was not; much leſs here, ſince it was not there invented till after our Conſtitution and Settlement. (18)    Such a Writ is generally illegal.    Hawkins, B. 2, ch. 1, Of Crim. Jur. (19) Viner, Tit. Commiſſion, A. (20)    1 Inſt. 464. (21) 29 M. (22)

*Mr. Auchmuty.*   Bacon. (23)    4 Inſt. 100. From the Words of the Law, this Court may have the Power of the Exchequer.    Now the Exchequer always had that Power; the Court cannot regard Conſequences, but muſt follow Law.    As for the Argument of Non-uſer, that ends whenever the Law is once executed; and this Law has been executed in this Country, and this Writ granted, not only by the Governor, but alſo from this Court in Ch. Juſtice Sewall's Time. (24)

*Mr. Gridley.*    This is properly a Writ of Aſſiſt-
*ants,*

---

(17) An indication of the poſition, more diſtinctly ſtated in Otis's firſt argument in February, 1761 : " An act of Parliament againſt the Conſtitution is void."   *Vid. poſt*, 474, & Appendix I, J.

(18) *Qu.* Whether Otis here intended to deny that Acts of Parliament bound the Province.   See Appendix I, J.

(19) 2 Hawk. c. 1, §§ 7, 8.

(20) " If commiſſion iſſues to take J. S. and his goods, without indictment, or ſuit of the party, or other proceſs, this is not good; for it is againſt the law."

(21) Probably 1 Inſt. 272 b, note to Lit. § 464 : " The ſureſt conſtruction of a ſtatute is by the rule and reaſon of the common law."

(22) Probably c. 29 of Magna Charta : " *Nullus liber homo capiatur, vel impriſonetur,*" &c.   2 Inſt. 45 & *ſeq.*   See Appendix I, E.

(23) Bac. Ab. Court of Exchequer.

(24) 1755–1759, *poſt*, 403–406.

*ants*, not Affiſtance; not to give the Officers a greater Power, but as a Check upon them. For by this they cannot enter into any Houſe, without the Preſence of the Sheriff or civil Officer, who will be always ſuppoſed to have an Eye over and be a Check upon them. Quoting Hiſtory is not ſpeaking like a Lawyer. If it is Law in England, it is Law here; it is extended to this Country by Act of Parliament. 7 & 8 Wm. & M. ch. 18. (25) By Act of Parliament they are entitled to like Affiſtants; (26) now how can they have like Affiſtants, (26) if the Court cannot grant them it; and how can the Court grant them like Affiſtance, if they cannot grant this Writ. Pity it would be, they ſhould have like Right, and not like Remedy; the Law abhors Right without Remedy. But the General Court has given this Court Authority to grant it, and ſo has every other Plantation Court given their Superiour Court. (27)

*The Juſtices* were unanimouſly of Opinion that this Writ might be granted, and ſome Time after, out of Term, it was granted. (28)

---

(25) St. 7 & 8 W. 3, c. 22, § 6.

(26) Altered in the MS. from " Affiſtance " to " Affiſtants." The words of St. 7 & 8 W. 3, c. 22, § 6, are " like affiſtance."

(27) But it is ſaid that in other colonies the writs were refuſed. 7 John Adams's Works, 267. 4 Bancroft's Hiſt. U. S. 431, note.

(28) Judgment was given at the concluſion of the argument on the 18th of November, 1761. Boſton Gazette of November 23, 1761. And it appears by the court files that the writ was iſſued on the 2d of December, 1761. See App. I, C.

For a report of another caſe of public intereſt, decided ſoon after, to which Paxton was a party, ſee *Province of Maſſachuſetts Bay* v. *Paxton*, App. II.